**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BLAIR ZIGLER, on behalf of herself and all others similarly situated, | |
| *Plaintiffs,* | Case No. 1:22-cv-4706 _____ |
| v. | |
| EDWARD D. JONES & CO., L.P., and THE JONES FINANCIAL COMPANIES, L.L.L.P., | JURY TRIAL DEMANDED |
| *Defendants.* | |

## PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Blair Zigler, in her individual capacity and on behalf of similarly situated Financial Advisors ("FAs"), asserts the following claims to address the discriminatory employment practices by Defendants Edward D. Jones & Co. L.P. and The Jones Financial Companies, L.L.L.P. (collectively, "Edward Jones"). Based on her personal knowledge, and on information and belief where indicated, Plaintiff alleges as follows:

### INTRODUCTION

1. As part of Edward Jones's 2021 Purpose, Inclusion, and Citizenship Report, 2020 "pay equity analysis," Edward Jones analyzed pay for its U.S. home offices to "asses equal pay for equal work across race and ethnicity, gender and gender identity, sexual orientation and military status."[1] The results revealed what female home office employees already knew: Edward Jones was paying them unequal compensation for equal work.

---

[1] *Id.* at p. 12.

2.      Former home office financial advisor Blair Zigler and the members of the proposed collective and classes are among the 2% of home office employees identified by Edward Jones as not receiving "equal pay for equal work."

3.      Despite Edward Jones' claim that these "[i]dentified gaps have been addressed," those impacted by Edward Jones' discriminatory compensation practices know this to be public-facing lip service, unaccompanied by actual change or meaningful compensation. Consequently, Edward Jones continues to knowingly and intentionally foster an inequitable and unlawful workplace that disproportionately disadvantages female home office employees and that does not serve any reasonable business purpose.

4.      Edward Jones's ongoing discriminatory conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C.§§ 2000e, *et seq.*, as amended, the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.*, the Equal Pay Act, 29 U.S.C. § 206(d), and the Illinois Equal Pay Act, 820 ILCS 112 *et seq.* Plaintiff Zigler brings this lawsuit on behalf of female Edward Jones home office employees to remedy past and ongoing discrimination and bring about meaningful change.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1343, in that this is a civil action arising under the Equal Pay Act, 29 U.S.C. § 206(d), *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Jurisdiction over the Illinois Equal Pay Act, 820 ILCS 112 *et seq.* claims is based on 28 U.S.C. § 1367, because the state law claims are so related to the federal claims that they form part of the same case or controversy. The Court likewise possesses subject matter jurisdiction over this case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed classes exceed $5 million, exclusive of interest and costs, and each have more than

2

100 putative class members. Plaintiff and most members of the proposed classes are citizens of states different than Edward Jones.

6.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b). Defendants are licensed to do business in this District, maintain branch offices in this District, and service clients who are residents of this District. Plaintiff worked for Edward Jones within this District and the unlawful conduct challenged herein occurred in this District.

## ADMINISTRATIVE PROCEEDINGS

7.      On or about June 14, 2022, Plaintiff Zigler filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging gender discrimination on behalf of herself and others similarly situated against Edward Jones.  This placed Edward Jones on notice of the representative allegations contained in this Complaint.  Plaintiff Zigler exhausted her administrative remedies.  On August 4, 2022, Plaintiff Zigler received her Notice of Right to Sue from the EEOC.  Plaintiff Zigler's claims under Title VII and the Illinois Human Rights Act were filed with this Court on August 24, 2022, which is within 90 days of receipt of the Notice of Right to Sue.

## THE PARTIES

8.      Edward D. Jones & Co., L.P. is a wholly owned subsidiary of the Jones Financial Companies, L.L.L.P., a limited liability partnership headquartered in St. Louis, Missouri. Edward Jones earned net revenue of approximately $10 billion for the fiscal year ended December 31, 2020, and it generated over $1.2 billion of income before its allocations to partners.

9.      Edward D. Jones & Co., L.P. is registered with the Securities and Exchange Commission as a broker-dealer and is a member organization of the Financial Industry

Regulatory Authority ("FINRA"). As part of its brokerage, investment advisory and financial wealth planning services, Edward Jones employs over 19,225 registered brokers, or FAs, across the United States and Canada.

10.    From July 2018 to the end of her employment in February 2022, Plaintiff Zigler was an "employee" of Edward Jones as defined by the Equal Pay Act, the Illinois Equal Pay Act, and Title VII. Plaintiff Zigler currently resides in Channahon, Illinois. Plaintiff's executed Consent to Join form pursuant to 29 U.S.C. § 216(b) is attached as **Exhibit 1**.

## FACTUAL ALLEGATIONS

11.    Edward Jones is a Fortune 500 company that provides financial services to clients in the United States and Canada.  According to its website, Edward Jones currently manages $1.7 trillion in assets for over 7 million clients.

12.    Edward Jones opened its first office in 1922.[2]  But it wasn't until 1974—52 years later—that Edward Jones hired a woman FA.[3]

13.    Prior to 2007, Edward Jones had no Diversity, Equity, and Inclusion efforts in place.

14.    Edward Jones employs over 19,225 FAs and has 14,667 branch offices in the United States.[4] But as of 2021—nearly 100 years after the company was founded—only 21% of Edward Jones FAs are women.[5]  These disproportionate hiring statistics show that Edward Jones is aware of its tendency to favor male FAs over female FAs.

---

[2] Edward Jones 2021 Purpose, Inclusion and Citizenship Report, p. 8.
[3] *Id.*
[4] The Jones Financial Companies, L.L.L.P. 10-K Report for fiscal year ended December 31, 2020.
[5] *Id.* p. 11.

15.     For its "home office" employees, Edward Jones maintains a top-down, centralized compensation structure.

16.     Edward Jones is organized as a partnership and maintains centralized control through home office leadership that issues company-wide policies, practices, and procedures that apply to all employees working in the United States as a part of its so-called "home office," including policies, practices, and procedures related to compensation, training, partnerships, sales support, and business opportunities.

17.     Edward Jones leadership responsible for compensation policy decisions is predominately white and male. Edward Jones is well-aware that women FAs are significantly underrepresented in senior leadership, recently acknowledging that only 30% of its senior leadership are women.[6]

18.     Due to long-standing systemic, company-wide discriminatory practices with respect to training, compensation, partnerships, sales support and business opportunities, female home office employees are denied wages and advancement opportunity on the basis of gender. As a result, female home office FAs at Edward Jones are paid less than male home office FAs.

19.     Edward Jones is well-aware of the centralized, systemic, company-wide discriminatory employment practices to which Plaintiff Zigler, and the class she seeks to represent, has been and continues to be subjected—and has been for many years.

20.     Edward Jones is specifically aware of the substantial and systemic discriminatory impact of its compensation policies but has willfully opted not to take meaningful, effective action to correct the same.

---

[6] Edward Jones 2021 Purpose, Inclusion, and Citizenship Report, Edward Jones, available at https://www.edwardjones.com/sites/default/files/acquiadam/2021-09/CAU-12493A-A_2021-PIC-report.pdf (last accessed April 25, 2022).

21.     In 2021, Edward Jones released a 36-page Purpose, Inclusion, and Citizenship Report that is available on its public website at https://www.edwardjones.com/us-en/why-edward-jones/about-us/corporate-citizenship.

22.     The report touts "revitalized" efforts to address diversity and inclusion in the report.  These purported efforts are nothing beyond a thinly veiled public relations campaign in response to a lawsuit filed against Edward Jones in 2018, which alleged systemic and intentional race discrimination at Edward Jones with respect to compensation and other terms of employment.[7]

23.     Page 12 of Edward Jones' report revealed that it conducted an internal Pay Equity Analysis: "In 2020, we analyzed pay for our U.S. home offices to assess equal work across race and ethnicity, gender and gender equality, sexual orientation and military status."  The report goes on to state, "[t]he results of that analysis were encouraging with less than 2% of associates identified as having any kind of gap in pay for work equal to their peers.  These identified gaps have been addressed to ensure equal pay for equal work."

24.     Tellingly, the report does not reference any specific policy, practice, or procedural changes to correct home office employee pay discrimination—demonstrating Edward Jones' established pattern of engaging in performative activism and superficial actions to create and/or maintain public perception as an inclusive workplace while it continues to turn a blind eye to discrimination.  Further, Edward Jones did not provide backpay despite acknowledging it paid women less than male colleagues for equal work.

---

[7] *See Wayne Bland, Felicia Slaton-Young, and Nyisha Bell, et al. v. Edward D. Jones & Co. L.P.,* No. 18-cv-3673 (N.D. Ill.).

25.    Plaintiff Zigler worked at Edward Jones as a home office employee from August 2019 to February 10, 2022.  Plaintiff Zigler was a dedicated and diligent employee who devoted substantial time to improvement of Edward Jones' corporate culture.

26.    Edward Jones repeatedly and discriminatorily denied Plaintiff Zigler equal compensation and advancement opportunities, which negatively impacted her opportunity for overall compensation and career advancement. On several occasions, both before and after the equal pay analysis, Plaintiff Zigler complained to Edward Jones leadership regarding the discrimination she and others experienced.

27.    In September 2021, Plaintiff Zigler received an email regarding the firm's Pay Equity Analysis, which stated that she was part of the 2% of workers who were being underpaid in their role. This email confirmed Plaintiff Zigler's concerns that she repeatedly raised to Edward Jones' leadership and Human Resources.

28.    Despite Edward Jones' acknowledgement that it paid Plaintiff Zigler less compensation for equal work, Edward Jones took no meaningful action to remedy past or future pay discrimination. Instead, Edward Jones offered Plaintiff Zigler a small salary increase that was not retroactive, and told her she would not be eligible for future "position-in-range" increases that it had promised her.

29.    To date, Edward Jones has taken no effective action to address and correct these long-standing, company-wide, and systemic discriminatory pay practices.

***Plaintiff Zigler's Experience at Edward Jones***

30.     Plaintiff Zigler began working at Edward Jones as a Financial Advisor on July 2, 2018.

31.     Before her employment with Edward Jones, Plaintiff Zigler spent approximately twelve years in both the financial and management industry, having previously worked as a Branch Manager and Commercial Lender for First Financial Bank; a Private Banker and Lender for First Source Bank; a Branch Manager for AmCore; the Head of Retail for Harvard State Bank; a Banker for Charter One; and a Manager for Lenscrafters.

32.     Despite Plaintiff Zigler's previous experience in the financial industry and management, her starting base salary at Edward Jones was 27% less than her base salary at her last full-time job. Plaintiff Zigler agreed to this reduction in salary with the understanding that her new asset bonuses, commissions, and fee income would be substantially more than her previous salary. Plaintiff Zigler was also promised four position-in-range ("PIR") increases by her leader at the time (Sue Bobrowski), given to recognize the anticipated increased responsibilities and duties attendant to her position.  However, she only received one PIR increase and was still well below the mid-point of the pay grade for her position.

33.     As a condition of Plaintiff Zigler's employment with Edward Jones, she was required to sign an FA Employment Agreement (the "Agreement"). The Agreement required, among other things, that she agree to pay up to $75,000 in "training costs" if her employment ended for any reason within three years of reaching "can sell" status and certain other conditions were met. From July 2018 to November 5, 2018, Plaintiff Zigler completed the requisite trainings and examinations to become an FA.

34.     After Plaintiff Zigler completed her series exams in August 2018, Edward Jones required her to attend various "Know Your Client" trainings in September and November 2018 before she was approved to sell. Following the "Know Your Client" trainings, she spent the entirety of her workday in September and October of 2018 knocking on doors of strangers in various neighborhoods. This "door knocking" was considered "training," and was a result of Edward Jones's requirement that Plaintiff Zigler gather personal information for 300 people who were not her family or friends.

35.     After completing the requisite training and examinations, Plaintiff Zigler achieved "can-sell" status on November 5, 2018, allowing her to recommend and trade investments for clients.

36.     From November 2018 through August 2019, Plaintiff Zigler worked in "the field," talking to clients, networking, and working alongside other FAs. During this time, Plaintiff Zigler was subject to inappropriate and unprofessional behavior, including unwanted sexual advances from male colleagues. She also received little to no support from Edward Jones in establishing a book of business—never receiving an internal asset transfer or an office, and being forced to knock on strangers' doors for business. Quitting, however, would require Plaintiff Zigler to pay back $75,000.00 in training pay.

37.     Although Plaintiff Zigler was given an office share in September 2018, her name was not associated with the office. It functioned only as a place for her to work, and she had no clients at that time.  If a new client were to walk into the office that Plaintiff Zigler used, that new client would not become a client of Plaintiff Zigler's, it would instead be assigned to the FA whose office Plaintiff Zigler shared.

38. When an Edward Jones's office in the city where Plaintiff Zigler resided became available around January of 2019, Edward Jones gave the office to a lateral male FA with less experience than Plaintiff Zigler and no clients. Plaintiff Zigler's colleagues were shocked that she did not receive the office.

39. Plaintiff Zigler never received a Goodknight transfer, which is where the assets of one FA are transferred to another FA for a variety of reasons (*e.g,.* retirement or scaling back of the transferring FA, creating more capacity for the transferring FA, *etc*.). Many of her male FA colleagues received Goodknight transfers, including multiple less experienced male FAs who recently graduated from college. Likewise, Plaintiff Zigler never received a retirement transition program asset transfer ("RTP").

40. Plaintiff Zigler was required to work twice as hard as her male FA counterparts because she was not given an office or current clients to speak with or gain referrals from.

41. Without the support of Goodknight or RTP transfers or her own office, she was required to continue walking alone door-to-door in designated neighborhoods to solicit contact information and sales leads from strangers. While door knocking, Plaintiff Zigler frequently found herself concerned for her safety.

42. Plaintiff Zigler and other female FAs complained to Edward Jones's leadership about the obvious safety concerns attendant to walking neighborhoods alone to solicit clients. Edward Jones's leadership dismissed these concerns, reiterating that door-knocking was a job requirement and suggesting they "take a self-defense class" if they were concerned for their personal safety. Many of Plaintiff Zigler's male colleagues at Edward Jones treated female FAs as a "lesser class," routinely engaging in sexually inappropriate and objectifying behavior toward Plaintiff Zigler and other female FAs. Multiple times, male colleagues engaged in such

inappropriate behavior that Plaintiff Zigler felt uneasy being along with them.  Because these behaviors seemed acceptped or tolerated by Edward Jones' leadership, Plaintiff Zigler did her best to ignore these behaviors and worked hard to advance her career.

43.     Plaintiff Zigler felt trapped in an unprofessional environment in which obvious male bias prevented her from advancement. Continuing to work in the field at Edward Jones meant she would continue to make less compensation than she deserved based on Edward Jones's culture of discrimination, and that she would be continually subject to the unchecked cycle of unwanted sexual advances and objectification by her male colleagues.

44.     Plaintiff Zigler felt the best option would be to work for Edward Jones' home office as an FA, which would allow her to work from home and avoid harassment from colleagues. This came with several disadvantages. As a "home office" employee, Plaintiff Zigler did not have her own clients, but would assist the clients of other FAs when they were out of office.  This role was less prestigious than that of a field FA.  Working at the home office also meant losing the opportunity to gain fees and commission without a significant increase in base pay. Edward Jones only nominally raised Plaintiff Zigler's base salary, to a sum 24% lower than her salary at her last job. For Plaintiff Zigler, a single mother at the time, this was a significant pay cut. Nonetheless, she worked hard in her role at the home office to advance her career – at various times advocating for increasing her compensation based on her hard work and experience. In response, Edward Jones' leadership told her to keep her head down and work hard.

45.     Plaintiff Zigler did just that. At her first annual review, she received "Exceeds Expectations" reviews; high performance which earned her a 4.5% pay increase. Edward Jones' leadership told her this was the highest raise attainable. She continued to pursue promotion

within Edward Jones. She pursued networking within Edward Jones and helped whenever she could, in whatever capacity she could – measures her leader told her were necessary to achieve a promotion to "Team Leader."

46.　　In March or April of 2020, a male partner at Edward Jones reached out to Plaintiff Zigler requesting a meeting to discuss her experience at the home office. This partner was the Regional Leader of her local area, and he had previously been her leader when she worked in the field. The partner told Plaintiff Zigler that he wanted to learn information about the home office for one of his Branch Office Assistants ("BOA") who was considering switching to the home office.

47.　　Plaintiff Zigler met the partner at a local restaurant and spoke with him for about an hour, describing her experience at the home office and offering to assist the partner's BOA however she could. When the meeting concluded, she told the partner goodbye, and that she was going to use the washroom before she left. When Plaintiff Zigler exited the washroom to walk to her car, the partner blocked the exit of the washroom area and told her that she should follow him into the washroom. She told him no. The partner then told Plaintiff Zigler that he wanted to have sex with her in the bathroom. Horrified, she said "No," and rushed past him to her car.

48.　　Edward Jones provided no recognition, guidance, or support to female FAs who were subject to inappropriate and unprofessional behavior, improper sexual advances, or innuendos from male colleagues. Nor did Edward Jones impose consequences on male FAs for this behavior. The "women's inclusion group," at Edward Jones likewise gave no attention to these issues. Instead, it met once a quarter to go shopping.

49.　　Because Plaintiff Zigler was still under contract for another eighteen months, she kept her head down and focused on doing all she could to advance her career, including fighting

for increased compensation and promotion. During this time, she received an "Exceeds Expectations" rating from the company. Edward Jones' leadership told her that she could make more money if she went back to working in the field. But Plaintiff Zigler knew this was not an option for her, as her leader would be the same Edward Jones' partner who sexually harassed her.

50.     On January 11, 2021, Plaintiff Zigler was promoted to Team Leader. Although she was to receive a pay bump of two pay grades, the salary she was offered was still lower than the minimum base salary for the role of Team Leader. Edward Jones' Human Resources told her that her salary was lower than the minimum base salary for the role of Team Leader "because there is a limit of 10% increase on promotions." Plaintiff Zigler nonetheless negotiated a raise of 12.153%, bringing her salary modestly above the *minimum* base salary for the role of Team Leader.

51.     Plaintiff Zigler repeatedly raised concerns with Edward Jones' leadership and Human Resources that she was being underpaid. She was told that her pay inequity would "correct itself" over time and that there was nothing they could do to help her.

52.     In her role as a Team Leader, she was to take over a team of associates in mid-February 2021 after weeks of training. Because Plaintiff Zigler had led large teams for many years prior to working for Edward Jones, she only needed training on the topics her new department covered.

53.     During Plaintiff Zigler's training for Team Leader, she informed her supervisor that she was pregnant and would be going on parental leave in May 2021. In direct response to learning of Plaintiff Zigler's pregnancy, and without regard for her ability to perform the duties of Team Leader, Edward Jones' leadership took adverse action against Plaintiff Zigler.

Specifically, Edward Jones' leadership told her that she would no longer be receiving a team in mid-February, and that she would not be given a team until she came back from parental leave. Edward Jones' leadership then reassigned Plaintiff Zigler to complete the work of subordinate employees, four pay grades below her title. This work, including answering phone calls from FAs and BOAs who needed assistance, was the type of work to be performed by the employees Plaintiff Zigler was supposed to be supervising as Team Leader and less prestigious than her previous role as a Home Office FA.

54.     Plaintiff Zigler complained to her supervisor about Edward Jones' discrimination against her based on pregnancy, and she requested Edward Jones assign her a team to lead per her job description. In response, Edward Jones' leadership did nothing. Plaintiff Zigler was forced to answer phone calls from FAs and BOAs for three months.

55.     In May 2021, Plaintiff Zigler went on parental leave. She returned to the firm on September 6, 2021. On that same date, she was surprised to receive an email regarding the firm's "Pay Equity Analysis," as no one in Edward Jones leadership or Human Resources had discussed this analysis with her previously. The email stated Plaintiff Zigler was part of the 2% of workers who were being underpaid in their role, confirming Plaintiff Zigler's concerns that she repeatedly raised to Edward Jones' leadership and Human Resources. The firm gave Plaintiff Zigler an $11,000.00 salary increase. However, Plaintiff Zigler did not receive backpay to correct the past pay inequity about which she repeatedly complained; rather, the email specifically stated the pay increase was not retroactive.  Moreover, the firm told her that she would no longer receive PIR increases because of this raise—raises which she had previously been promised.

56. Edward Jones' pay equity analysis demonstrates that Plaintiff Zigler was paid less than her male colleagues for "similar work." The names of the specific male colleagues earning more than Plaintiff Zigler for the same work is known to Edward Jones.

57. Eleven months after starting in the role of Team Leader, Plaintiff Zigler was finally given a team to lead in November of 2021. However, the team Edward Jones gave her was comprised of entirely new employees. This was highly unusual. None of Plaintiff Zigler's colleagues or leaders had experience taking on a team of entirely new employees. This forced Plaintiff Zigler to work mostly independently of her colleagues and leaders, who were unable to support her. This required Plaintiff Zigler to work longer hours and perform additional tasks than her peers. For example, Plaintiff Zigler was required to do five call reviews on each associate, while other Team Leaders were only required to do one per associate.

58. Plaintiff Zigler's annual review and third trimester review were both due in January 2022. By that time, Plaintiff Zigler's leader had retired and been replaced by an interim leader. In anticipation of her upcoming reviews, Plaintiff Zigler met with the interim leader to emphasize how hard she was working, and to detail the measures she was taking to support her team of entirely new employees.

59. During the review process, Edward Jones' leadership ranked Plaintiff Zigler against her peers. However, most of the objectives upon which Plaintiff Zigler was measured did not apply to her or her team's unique circumstances. For example, Edward Jones nonsensically graded Plaintiff Zigler on whether her team completed a certain survey that her team never received because each team member started after September 1, 2021, the cutoff date for participation in the survey. Further, because Plaintiff Zigler's team was comprised of entirely new personnel, the metrics for her team were not reasonably comparable to any other team as

15

they were all comprised of established associates. Likewise, Plaintiff Zigler's reviews incorporated no consideration for the additional hours she worked, tasks she was required to complete, for her resourcefulness, or for the creativity, level of work and skill, and challenges attendant to leading an entirely new team.

60.     As a result, Plaintiff Zigler's rating went from "Exceeds Expectations" to "Meeting Expectations," lowering her third trimester bonus potential and negatively impacting her yearly merit increase. As a result, she was given only a 2% raise – an amount well below a cost-of-living increase. Plaintiff Zigler resigned from Edward Jones on February 1, 2022, citing inadequate pay as her reason for leaving. Plaintiff Zigler's experience at Edward Jones is similar to the experience of other women FAs.

61.     Over the course of Plaintiff Zigler's time at Edward Jones in the "home office", she was continuously paid less than, given fewer opportunities than, and given less support than male colleagues performing the same job.

62.     Edward Jones discriminated against Plaintiff Zigler and other similarly situated home office FAs because of her sex/gender in violation of Title VII and other federal laws, and Edward Jones criticized Plaintiff Zigler for raising concerns related to the same.  Accordingly, Plaintiff Zigler files this suit on behalf of herself and all other home office FAs at Edward Jones who are discriminated against and paid inequitably based on sex/gender.

## COLLECTIVE ACTION ALLEGATIONS UNDER EQUAL PAY ACT

63.     Edward Jones has engaged in systemic gender discrimination against its female employees. Edward Jones has caused, contributed to, and perpetuated gender-based pay disparities through common policies, practices, and procedures, including but not limited to common compensation and performance management policies and centralized decision-making.

64.     Plaintiff Zigler brings this claim for violations of the Equal Pay Act as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all members of the Equal Pay Act Collective ("EPA Collective"). The EPA Collective is defined as follows:

**All current and former female FAs employed by Edward Jones' "home office" from three years prior to the filing of the original Complaint to the present. This collective definition excludes workers "in the field."**

65.     Plaintiff Zigler seeks to represent all female FAs, as described above, who were paid less than male employees for doing similar work. The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

66.     Questions of law and fact common to the EPA Collective and Plaintiff Zigler include but are not limited to the following:

a.  Whether Edward Jones unlawfully failed and continues to unlawfully fail to compensate female FAs at a level commensurate with comparable male employees;

b.  Whether Edward Jones' policy, practice, or procedure of failing to compensate female FAs at a level commensurate with comparable male employees violates the applicable provisions of the Equal Pay Act; and

c.  Whether Edward Jones' failure to compensate female FAs at a level commensurate with comparable male employees was willful within the meaning of the Equal Pay Act.

67.     Plaintiff Zigler's Equal Pay Act claim may be maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) because Plaintiff Zigler is similarly situated to the female employees described in the proposed collective. Plaintiff Zigler's claims are similar to the claims asserted by the proposed collective.

68.     Plaintiff Zigler and the proposed collective are (a) similarly situated; and (b) are subject to Edward Jones' common compensation policies, practices and procedures and centralized decision-making resulting in unequal pay based on sex by failing to compensate female FAs at a level commensurate with male employees who perform substantially equal work and/or hold equivalent levels, job titles, and positions.

## **CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23**

69.     Plaintiff Zigler brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of female "home office" employees who work or worked for Edward Jones as FAs and who were subjected to systemic discrimination by Defendants due to their gender or sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, and the Illinois Equal Pay Act, 820 ILCS 112/1 *et seq.*

70.     Plaintiff Zigler seeks to represent a Title VII class defined as:

> **All current and former female "home office" FAs employed by Edward Jones during the applicable limitations period. This collective definition excludes workers "in the field."**

71.     Plaintiff Zigler seeks to represent Illinois Human Rights Act and Illinois Equal Pay Act classes defined as follows:

> **All current and former female "home office" FAs employed by Edward Jones in Illinois during the applicable limitations period. This collective definition excludes workers "in the field."**

72.     All requirements of class certification are met by the proposed classes.

73.     The classes of female FAs are so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

74. There are questions of law and fact common to the classes, and those questions can and should and be resolved in a single proceeding that furthers this litigation. Fed. R. Civ. P. 23(a)(2).

75. The claims alleged by Plaintiff Zigler are typical of the claims of the class members. Fed. R. Civ. P. 23(a)(3).

76. Plaintiff Zigler will fairly and adequately represent and protect the interests of the classes. Fed. R. Civ. P. 23(a)(4).

77. The issues of determining liability and equitable relief, among other issues, are appropriate for issue certification under Rule 23(c)(4), as are the other common issues.

78. The proposed classes also meet the requirements for certification under Rule 23(b)(2) and Rule 23(b)(3). The questions of law and fact common to the members of the classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

## COUNT I
**Violation of the Fair Labor Standards Act of 1938, as Amended by the Equal Pay Act of 1963, 29 U.S.C. § 206,** *et seq.***,**
**DENIAL OF EQUAL PAY FOR EQUAL WORK ON THE BASIS OF GENDER**

79. Plaintiff Zigler realleges and incorporates by reference each and every allegation in the previous paragraphs as though fully set forth herein.

80. This Count is brought on behalf of Plaintiff Zigler and all members of the EPA Collective against Edward Jones.

81. The Equal Pay Act of the Fair Labor Standards Act, 29 U.S.C. § 206(d), makes it unlawful for an employer on the basis of gender to pay lower wages to employees of one sex than it does to similarly situated employees of the other sex.

82. Edward Jones is an employer of Plaintiff Zigler and the members of the EPA Collective within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206, et seq., as amended by the Equal Pay Act of 1963.

83. The Edward Jones enterprise constitutes a single establishment within the meaning of 29 U.S.C. § 206(d).

84. Edward Jones manages its business from its central administrative unit that exercises company-wide discretion and power over issues like hiring and firing, setting wages, and training.

85. There are no distinctions between the job responsibilities of FAs working in any Edward Jones "home office" locations.

86. Edward Jones uses common, company-wide policies and procedures that set and otherwise impact the wages of FAs throughout the country.

87. Edward Jones has discriminated against Plaintiff Zigler and the members of the EPA Collective by paying them less than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

88. Edward Jones discriminated against Plaintiff Zigler and the members of the EPA Collective by subjecting them to common discriminatory pay and performance management policies, including discriminatory salaries in violation of the Equal Pay Act.

89. The differential in pay between Plaintiff Zigler and the members of the EPA Collective and similarly situated male employees was not due to seniority, merit, quantity or quality of production, or any other legitimate factor.

90. Edward Jones caused, attempted to cause, and contributed to the continuation of wage rate discrimination based on sex in violation of the Equal Pay Act.

91. Edward Jones knowingly and intentionally paid Plaintiff Zigler and the members of the EPA Collective less than similarly situated male employees in violation of the Equal Pay Act. The foregoing conduct constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C § 255(a). Because Edward Jones has willfully violated the Equal Pay Act, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255(a).

92. As a result of Edward Jones' unlawful conduct, Plaintiff Zigler as well as the members of the EPA Collective suffered and will continue to suffer harm, including, but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial losses, as well as non-economic damages.

93. Plaintiff Zigler and the EPA Collective are entitled to all legal and equitable remedies available for violations of the Equal Pay Act, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigations costs, and other compensation pursuant to 29 U.S.C. § 216(b).

### **PRAYER RELIEF ON COUNT I**

WHEREFORE, on behalf of herself and the proposed collective she seeks to represent, Plaintiff Zigler respectfully requests this Court:

    a.  Certify the proposed collective as a collective action; and

i. Promptly issue notice pursuant to 29 U.S.C § 216(b) to all similarly situated members of the proposed collective, which (a) apprises them of the pendency of this action, and (b) permits them to assert timely Equal Protection Act claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b); and

ii. Toll the statute of limitations on the claims of all members of the proposed collective from the date the original complaint was filed until the members of the proposed collective are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their rights to opt in;

b. Designate Plaintiff Zigler and her counsel as representatives of the proposed collective;

c. Find that Edward Jones' actions were willful;

d. Award Plaintiff Zigler and all others similarly situated compensatory damages, including back pay and a sum to compensate Plaintiff Zigler and the proposed collective for any increased tax liability on a lump sum award;

e. Award liquidated damages to Plaintiff Zigler and the proposed collective;

f. Award Plaintiff Zigler and the proposed collective pre- and post-judgment interest and attorneys' fees, costs, and disbursements, as provided by law.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.
### SEX/GENDER-BASED WAGE DISCRIMINATION

94. Plaintiff Zigler, realleges and incorporates by reference each and every allegation in the previous paragraphs as though fully set forth herein.

95.     This Count is brought on behalf of Plaintiff Zigler and all similarly situated members of the Title VII Class against Edward Jones.

96.     Plaintiff Zigler and the similarly situated members of the Title VII Class are female, making them members of a protected class.

97.     Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex or gender. Under 42 U.S.C. § 2000e(k), "on the basis of sex" includes, but is not limited to, "because of or on the basis of pregnancy."

98.     Edward Jones is an "employer" of Plaintiff Zigler and the members of the Title VII Class within the meaning of Title VII, 42 U.S.C. § 2000e(b).

99.     Plaintiff Zigler and the members of the Title VII Class are "employees" of Edward Jones within the meaning of Title VII, 42 U.S.C. § 2000e(f).

100.     At all materials times, Plaintiff Zigler and the members of the Title VII Class met Edward Jones's legitimate expectations by adequately performing their job duties as set forth above.

101.     Edward Jones has discriminated against Plaintiff Zigler and the members of the Title VII Class on the basis of sex by paying them less than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

102.     Edward Jones discriminated against Plaintiff Zigler and the members of the Title VII Class on the basis of sex by subjecting them to common discriminatory pay and performance management policies, including discriminatory salaries and advancement opportunities in violation of Title VII.

103. The differential in pay between Plaintiff Zigler and the members of the Title VII Class and similarly situated male employees was not due to seniority, merit, quantity or quality or production, or any other legitimate factor.

104. Edward Jones caused, attempted to cause, contributed to, and caused the continuation of compensation discrimination based on sex/gender in violation of Title VII.

105. Edward Jones intentionally paid Plaintiff Zigler and the members of the Title VII Class less than similarly situated male employees in violation of Title VII. The foregoing conduct constitutes a willful violation of Title VII.

106. As a result of Edward Jones' unlawful conduct, Ms. Zigler and the members of the Title VII Class suffered and will continue to suffer harm, including, but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial losses, as well non-economic damages.

107. Plaintiff Zigler and the members of the Title VII Class are entitled to all legal and equitable remedies available for violations of Title VII, including, but not limited to, back pay, front pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigations costs, and other compensation.

## PRAYER FOR RELIEF ON COUNT II

WHEREFORE, Plaintiff Zigler, on behalf of herself and the class she seeks to represent, respectfully requests this Court:

    a. Certify the proposed class as a class action pursuant to Federal Rule of Civil Procedure 23;

    b. Designate Plaintiff Zigler and her counsel as representatives of the proposed class;

    c.   Declare that Edward Jones' acts, conduct, policies and practices are unlawful and violate Title VII;

    d.   Declare that Edward Jones engages in a pattern and practice of discrimination against women FAs and employs policies and practices that have an unlawful disparate impact on women FAs.

    e.   Order Edward Jones to reform its discriminatory policies and practices;

    f.   Award Plaintiff Zigler and all others similarly situated compensatory and punitive damages;

    g.   Award Plaintiff Zigler and all others similarly situated the value of all compensation and benefits lost and that they will lose in the future as a result of Edward Jones' unlawful conduct;

    h.   Award Plaintiff Zigler and all others similarly situated prejudgment interest and attorneys' fees, costs, and disbursements, as provided by law; and

    i.   Award Plaintiff Zigler and all others similarly situated such other equitable, injunctive, and legal relief as this Court deems just and proper and end the discrimination and fairly compensate Plaintiff Zigler.

## COUNT III

**Violation of the Illinois Human Rights Act, 775 ILCS 5/101 *et seq.***
**SEX/GENDER-BASED WAGE DISCRIMINATION**

108.    Plaintiff Zigler, realleges and incorporates by reference each and every allegation in the previous paragraphs as though fully set forth herein.

109.    This Count is brought on behalf of Plaintiff Zigler and all similarly situated members of the Illinois Class against Edward Jones.

110. Plaintiff Zigler and the similarly situated members of the Illinois Class are female, making them members of a protected class.

111. The Illinois Human Rights Act prohibits discrimination in employment based, in whole or in part, upon any employee's sex.

112. Edward Jones is an "employer" of Plaintiff Zigler and the members of the Illinois Class within the meaning of 775 ILCS 5/2-101(B).

113. Plaintiff Zigler and the members of the Illinois Class are "employees" of Edward Jones within the meaning of 775 ILCS 5/2-101(A).

114. At all materials times, Plaintiff Zigler and the members of the Illinois Class met Edward Jones's legitimate expectations by adequately performing their job duties as set forth above.

115. Edward Jones has discriminated against Plaintiff Zigler and the members of the Illinois Class on the basis of sex by paying them less than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

116. Edward Jones discriminated against Plaintiff Zigler and the members of the Illinois Class on the basis of sex by subjecting them to common discriminatory pay and performance management policies, including discriminatory salaries and advancement opportunities in violation of the Illinois Human Rights Act.

117. The differential in pay between Plaintiff Zigler and the members of the Illinois Class and similarly situated male employees was not due to seniority, merit, quantity or quality or production, or any other legitimate factor.

26

118. Edward Jones caused, attempted to cause, contributed to, and caused the continuation of compensation discrimination based on sex/gender in violation of the Illinois Human Rights Act.

119. Edward Jones intentionally paid Plaintiff Zigler and the members of the Illinois Class less than similarly situated male employees in violation of the Illinois Human Rights Act. The foregoing conduct was done with malice or reckless indifference to Plaintiff and the Illinois Class's protected rights under the Illinois Human Rights Act.

120. As a result of Edward Jones' unlawful conduct, Ms. Zigler and the members of the Illinois Class suffered and will continue to suffer harm, including, but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial losses, as well non-economic damages.

121. Plaintiff Zigler and the members of the Illinois Class are entitled to all legal and equitable remedies available for violations of the Illinois Human Rights Act, including, but not limited to, back pay, front pay, liquidated damages, pre-judgment and post-judgment interest, punitive damages, reasonable attorneys' fees and litigations costs, and other compensation.

## **PRAYER FOR RELIEF ON COUNT III**

WHEREFORE, Plaintiff Zigler, on behalf of herself and the class she seeks to represent, respectfully requests this Court:

a. Certify the proposed class as a class action pursuant to Federal Rule of Civil Procedure 23;

b. Designate Plaintiff Zigler and her counsel as representatives of the proposed class;

c.  Declare that Edward Jones' acts, conduct, policies and practices are unlawful and violate the Illinois Human Rights Act;

d.  Declare that Edward Jones engages in a pattern and practice of discrimination against women FAs and employs policies and practices that have an unlawful disparate impact on women FAs.

e.  Order Edward Jones to reform its discriminatory policies and practices;

f.  Award Plaintiff Zigler and all others similarly situated compensatory and punitive damages;

g.  Award Plaintiff Zigler and all others similarly situated the value of all compensation and benefits lost and that they will lose in the future as a result of Edward Jones' unlawful conduct;

h.  Award Plaintiff Zigler and all others similarly situated prejudgment interest and attorneys' fees, costs, and disbursements, as provided by law; and

i.  Award Plaintiff Zigler and all others similarly situated such other equitable, injunctive, and legal relief as this Court deems just and proper and end the discrimination and fairly compensate Plaintiff Zigler.

## COUNT IV

**Violation of Illinois' Equal Pay Act of 2003, 820 ILCS 112 *et seq*.**
**DENIAL OF EQUAL PAY FOR EQUAL WORK ON THE BASIS OF GENDER**

122.  Plaintiff Zigler realleges and incorporates by reference each and every allegation in the previous paragraphs as though fully set forth herein.

123.  This Count is brought on behalf of Plaintiff Zigler and the Illinois Class against Defendant Edward Jones.

124.     The Illinois Equal Pay Act ("IEPA"), 820 ILCS 112/10, prohibits employers from discriminating between employees on the basis of sex by paying wages to an employee at a rate less than the rate at which the employer pays wages to another employee of the opposite sex for the same or substantially similar work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working condition.

125.     Edward Jones is an employer of Plaintiff Zigler and the members of the Illinois within the meaning of the 820 ILCS 112/5.

126.     Edward Jones manages its business from its central administrative unit that exercises company-wide discretion and power over issues like hiring and firing, setting wages, and training.

127.     There are no distinctions between the job responsibilities of FAs working in any Edward Jones "home office" locations.

128.     Edward Jones uses common, company-wide policies and procedures that set and otherwise impact the wages of FAs throughout the country.

129.     Edward Jones has discriminated against Plaintiff Zigler and the members of the Illinois Class by paying them less than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

130.     Edward Jones discriminated against Plaintiff Zigler and the members of the Illinois Class by subjecting them to common discriminatory pay and performance management policies, including discriminatory salaries in violation of the IEPA.

131.     The differential in pay between Plaintiff Zigler and the members of the Illinois Class and similarly situated male employees was not due to seniority, merit, quantity or quality of production, or any other legitimate factor.

132.     Edward Jones caused, attempted to cause, and contributed to the continuation of wage rate discrimination based on sex in violation of the Section 10 of the IEPA, 820 ILCS 112/10(a).

133.     Edward Jones knowingly and intentionally paid Plaintiff Zigler and the members of the Illinois Class less than similarly situated male employees in violation of the IEPA. In doing so, Edward Jones violated the IEPA with malice or reckless indifference.

134.     As a result of Edward Jones' unlawful conduct, Plaintiff Zigler as well as the members of the Illinois Class suffered and will continue to suffer harm, including, but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial losses, as well as non-economic damages.

135.     Plaintiff Zigler and the Illinois Class are entitled to all legal and equitable remedies available for violations of the IEPA, including, but not limited to, back pay, liquidated damages, punitive damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigations costs, and other compensation pursuant to 820 ILCS 112/30.

## **PRAYER FOR RELIEF ON COUNT IV**

WHEREFORE, Plaintiff Zigler, on behalf of herself and the class she seeks to represent, respectfully requests this Court:

    a.   Certify the proposed class as a class action pursuant to Federal Rule of Civil Procedure 23;

b.  Designate Plaintiff Zigler and her counsel as representatives of the proposed class;

c.  Declare that Edward Jones' acts, conduct, policies and practices are unlawful and violate the Illinois Equal Pay Act;

d.  Declare that Edward Jones engages in a pattern and practice of discrimination against women FAs and employs policies and practices that have an unlawful disparate impact on women FAs.

e.  Order Edward Jones to reform its discriminatory policies and practices;

f.  Award Plaintiff Zigler and all others similarly situated compensatory and punitive damages;

g.  Award Plaintiff Zigler and all others similarly situated the value of all compensation and benefits lost and that they will lose in the future as a result of Edward Jones' unlawful conduct;

h.  Award Plaintiff Zigler and all others similarly situated prejudgment interest and attorneys' fees, costs, and disbursements, as provided by law; and

i.  Award Plaintiff Zigler and all others similarly situated such other equitable, injunctive, and legal relief as this Court deems just and proper and end the discrimination and fairly compensate Plaintiff Zigler.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  September 01, 2022          Respectfully submitted,

**WERMAN SALAS P.C.**

*/s/ Douglas M. Werman*
Douglas M. Werman
Maureen A. Salas
77 W. Washington St., Ste 1402
Chicago, IL 60602
Telephone:    312-419-1008
Facsimile:    312-419-1025
dwerman@flsalaw.com
msalas@flsalaw.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, #43450 (MO)*
Alexander T. Ricke, #65132 (MO)*
Bria Davis, #71516 (MO)*
Jordan A. Kane, #71028 (MO)*
*Pro hac vice* forthcoming
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone:    816-714-7100
Facsimile:    816-714-7101
hanson@stuevesiegel.com
ricke@ stuevesiegel.com
davis@stuevesiegel.com
kane@ stuevesiegel.com

AND

**HF LAW FIRM LLC**
Christi J. Hilker, #53523 (MO)*
Amy M. Fowler, #52359 (MO)*
*Pro hac vice* forthcoming
3101 W. 86th St.
Leawood, KS 66206
Telephone:    (816)739-0107
Facsimile:    (913)426-9181
christi@hflawfirmllc.com
amy@hflawfirmllc.com

*Attorneys for Plaintiff*