```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

BLAIR ZIGLER, on behalf of      )
herself and all others          )
similarly situated              )
                                )
        Plaintiff,              )
                                )
                                )
    v.                          )  No. 22 C 4706
                                )
                                )
EDWARD D. JONES & CO., L.P. et  )
al.                             )
                                )
        Defendants.             )

Memorandum Opinion and Order

The Amended Complaint in this case alleges that defendant Edward D. Jones & Co., a financial services firm, paid plaintiff Blair Zigler, a Financial Advisor (or "FA"), and similarly situated female employees less than it paid male employees for comparable work in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Illinois Human Rights Act, 775 ILCS 5/101 et seq., and the Illinois Equal Pay Act ("IEPA"), 820 Ill. Comp. Stat. 112/1 et seq.[1] Zigler alleges that centralized, systemic, company-wide, discriminatory employment practices yielded the pay inequity she

---

[1] The complaint also names defendant Jones Financial Companies, LLC, but plaintiff stipulates to the dismissal of this defendant without prejudice. *See* ECF 34 at n. 6.

challenges here and that defendant has long been aware of these discriminatory practices. Indeed, the Amended Complaint asserts that after defendant was sued for systemic race discrimination in 2018,[2] it conducted an internal pay equity analysis and reported in its "Purpose, Inclusion, and Citizenship Report, 2020" that as many as two percent of its nearly 20,000 employees—including Zigler herself—had been paid less than their peers for comparable work in 2020. Both before and after learning the results of this analysis, Zigler allegedly complained to defendant's leadership about defendant's discriminatory compensation practices, but defendant took no meaningful action to remedy the pay gaps its pay equity analysis had uncovered.

Zigler began her employment with defendant in 2018 as an Illinois-based "Field FA," a customer-facing role with a commission-based compensation structure. In that role, Zigler allegedly confronted unwanted sexual advances from male colleagues, and she was not given the support that her male colleagues received to help them establish a book of business, such as a dedicated office and internal asset transfers.[3] Instead,

---

[2] *See Wayne Bland, Felicia Slaton-Young, and Nyisha Bell, et al. v. Edward D. Jones & Co. L.P.,* No. 18-cv-3673 (N.D. Ill.). This class action ended in a $34 million settlement, which received final approval from Judge Wood on July 15, 2021.

[3] Plaintiff describes two types of asset transfers, which she claims her male colleagues—including many less experienced than she—received: "Goodknight transfer[s], which is where the assets of one FA are transferred to another FA for a variety of reasons

2

plaintiff was required to drum up business herself by knocking on strangers' doors in designated Illinois neighborhoods—an approach that she felt was unsafe. But defendant dismissed her safety concerns, telling her to "take a self-defense class" if she was fearful. Am. Compl. at ¶¶ 46, 52. In view of defendant's lack of support for her professional development and personal safety as a Field FA, plaintiff decided to apply for a position as a Home Based Associate ("HBA") FA, a remote position with defendant's home office.[4] In this allegedly less prestigious position, which did not offer an opportunity to earn fees or commissions, plaintiff did not have her own clients but rather assisted the clients of other FAs when they were out of office.

According to the Amended Complaint, Zigler continued to suffer from sex-based discrimination in her HBA role as well. On one occasion, a male partner at one of defendant's local Illinois offices—the Regional Leader for Zigler's local area, and someone with whom Zigler had worked as a Field FA—requested a work-related meeting. Zigler met the partner at a local restaurant, and after

---

(e.g retirement or scaling back of the transferring FA, creating more capacity for the transferring FA, etc.)" and "retirement transition program asset transfer[s]" or "RTP"s. Am. Compl. at ¶ 49. Plaintiff allegedly received neither during her time as a Field FA.

[4] Plaintiff variously describes her job title as a "Home Based Associate," an "HBA Home Office FA," a "Home Office FA," and a "Home Based Associate FA." All of these variations appear to refer to the job Zigler held after she left her position as a Field FA and before she became a Team Leader.

3

discussing work-related matters, the partner allegedly cornered Zigler outside the restroom and told her that he wanted to have sex with her. Zigler refused.

Zigler was promoted to the position of Team Leader—another home-office position—in January of 2021 and began several weeks of training for the position. Although she had been told that she would be assigned a team to lead in February of 2021, after she told defendant that she would be taking parental leave starting in May of 2021, defendant decided not to assign her a team until she returned from leave in September of 2021. In the meantime, she was assigned tasks commensurate with the work of employees four grades below her title—indeed, the very employees she would supervise as a Team Leader.

When Zigler returned from parental leave, she received an email informing her that she had been identified as having received unequal pay relative to her peers. Although defendant raised Zigler's pay to align her salary with those of colleagues performing similar work, the raise was not retroactive, and thus did not compensate her for past discrimination. In addition, Zigler's pay increase was offset by defendant's decision to make her ineligible for future "position-in-range" raises, which she had previously been promised.

When Zigler was finally assigned a team to lead in November of 2021, she discovered that all of her team members were new

4

employees—an unusual situation that not only made plaintiff's job harder and more labor-intensive than that of other Team Leaders, it also made it difficult or impossible for her to perform well according to the performance metrics by which her work was assessed.[5] This caused Zigler's performance rating to fall from "Exceeding Expectations" to "Meeting Expectations," with a commensurate fall in her bonus potential and yearly merit increase.

In early 2022, Zigler resigned her position, citing inadequate pay as the reason for her departure. She claims that she was "continually paid less than, given fewer opportunities than, and given less support than her male colleagues performing the same job," and that her experience was similar to that of "other women FAs." Am. Compl. at ¶ 88-89. On June 14, 2022, Zigler filed a charge of discrimination with the Illinois Human Rights Commission and the Equal Employment Opportunity Commission. She received a Right to Sue notice on August 4, 2022.

With respect to her EPA claim, Zigler seeks to represent a collective defined as:

> **All current and former female FAs employed by Edward Jones' "home office" from three years prior to the filing of the original Complaint to the present. This collective definition excludes workers "in the field."**

---

[5] For example, Zigler alleges that she was graded on whether her team had completed a certain survey, but her team had not received the survey because each team member had started working after the cut-off date for the survey's completion.

With respect to her Title VII, IHRA, and IEPA claims, Zigler seeks to represent classes defined as:

> **All current and former female "home office" FAs employed by Edward Jones [in Illinois] during the applicable limitations period. This collective definition excludes workers "in the field."**[6]

Defendant moves to dismiss the complaint in its entirety on various grounds. For the reasons explained below, the motion is granted in part.

I.

Defendant leads with the argument that I lack specific personal jurisdiction over it because none of Zigler's claims arise out of defendant's conduct with Illinois.[7] There is no merit to this argument. A court has specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). All agree that defendant hired Zigler to work in Illinois, and that both before and after Zigler became an HBA, defendant understood that she would live and work in Illinois. Indeed, defendant allegedly paid for her to obtain the various Illinois licenses, certifications, and

---

[6] The bracketed portion of this definition applies only to the IEPA class.
[7] Plaintiff does not assert that defendant is subject to general jurisdiction in this forum.

registrations it required of her as a condition of her employment. *See* Am. Compl. at ¶¶ 41-42. Additionally, defendant allegedly provided plaintiff with office equipment for her to use for the work she performed as an HBA in Illinois, and it paid for her Internet costs associated with that work. *Id.* at ¶ 55. Plaintiff was trained in Illinois to be an HBA, *id.* at ¶ 57, and when she was promoted to the position of Team Leader, she received training for that role in Illinois from an Illinois-based employee, *id.* at ¶ 66. At a minimum, defendant consented to an ongoing relationship with plaintiff, training her for jobs it knew she would perform to its benefit in Illinois and providing her with the material support she needed to do so. *See Tekway, Inc. v. Agarwal*, No. 19-CV-6867, 2020 WL 5946973, at *6 (N.D. Ill. Oct. 7, 2020) (asserting specific jurisdiction over employee who worked remotely for an Illinois-based company from her home in New Jersey); *Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 271 (E.D.N.Y. 2015) (asserting personal jurisdiction over out-of-state defendant, who "hired her knowing that she would live and work in Brooklyn [New York]"). In addition, plaintiff was allegedly harassed at an Illinois restaurant by an Illinois-based partner with whom she had previously worked in Illinois. *Id.* at ¶¶ 60-61. That defendant did not, as its affiants state, "require [plaintiff's] presence in Illinois," or reap a business benefit tied specifically to plaintiff's Illinois location is not dispositive. I am satisfied

7

that the requirements of specific personal jurisdiction are satisfied.

Defendant next argues that I lack personal jurisdiction with respect to the potential claims of out-of-state, opt-in members of the EPA collective. This issue is the subject of a "nationwide split at the district-court level," *Parker v. IAS Logistics DFW, LLC*, No. 20 C 5103, 2021 WL 4125106, at *3 (N.D. Ill. Sept. 9, 2021), and the three courts of appeals to have addressed the issue have likewise divided, *compare Canaday v. Anthem Cos.*, 9 F.4th 392 (6th Cir. 2021), and *Vallone v. CJS Solutions Group*, 9 F.4th 861 (8th Cir. 2021) (both concluding that federal courts lack jurisdiction over claims of opt-in collective members with insufficient ties to the forum), with *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022) (federal district court can properly assert jurisdiction over "non-resident opt-in claims"). The Seventh Circuit has not spoken on this issue, and while several courts in this circuit have aligned with the view of the Sixth and Eighth Circuits, they have declined to dismiss the claims of out-of-state plaintiffs and opt-ins on jurisdictional grounds prior to conditional certification. *See Iannotti v. Wood Grp. Mustang*, 603 F. Supp. 3d 649, 652 at n. 6 (S.D. Ill. 2022); *Parker v. IAS Logistics DFW, LLC*, No. 20 C 5103, 2021 WL 170788, at *1 (N.D. Ill. Jan. 19, 2021) (denying motion to dismiss for lack of personal jurisdiction without prejudice to renewal after

8

ruling on conditional certification). That approach strikes me as sensible, and I follow it here.

Defendant next challenges the adequacy of Zigler's pleading. Its first argument is that Zigler fails to state viable EPA and IEPA claims. To state a prima facie case under the EPA, a plaintiff must demonstrate: "(1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions." *Markel v. Bd. of Regents of Univ. of Wisconsin Sys*., 276 F.3d 906, 912-13 (7th Cir. 2002) (citation omitted). The elements of an IEPA claim are similar. *See Boyd v. City of Chicago*, No. 20 C 710, 2023 WL 3627708, at *4 (N.D. Ill. May 24, 2023) (citations omitted). Defendant faults Zigler for failing to identify and describe the duties of "a comparable male 'home office FA'" who she claims was paid higher wages than she was, Def.'s Mem., ECF 31 at 12, citing several cases in which courts have dismissed wage claims based on conclusory allegations about unidentified comparators. *See, e.g., Karlo v. St. Augustine Coll*., No. 20-CV-5084, 2021 WL 2156438, at *2 (N.D. Ill. May 27, 2021) (dismissing claims supported by allegations that failed to state whether putative comparators "were faculty members, how much they were paid, what their work entailed, or under what conditions they worked."); *Wade v. Morton Bldgs., Inc*., No. 09-1225, 2010 WL 378508, at *6 (C.D. Ill. Jan. 27, 2010)

9

(dismissing equal pay claims because the plaintiff's allegations "give Defendant no hint of the identity of the comparable male employee or his position"). What sets this case apart, however, are Zigler's allegations about the pay equity analysis, which she claims revealed, based on an analysis that accounted for factors including "gender," that plaintiff was paid less than her peers in 2020.

Indeed, defendant observes correctly that plaintiff relies entirely on facts and inferences drawn from defendant's pay equity analysis to substantiate her wage claims. *See*, e.g., Am. Compl., ECF 24 at ¶ 27 (quoting from pay equity analysis report: "In 2020, we analyzed pay for our U.S. home offices to assess equal work across race and ethnicity, gender and gender equality, sexual orientation and military status"), ¶ 31 (describing plaintiff's receipt of an email stating "that she was part of the 2% of workers who were being underpaid in their home office role"), and ¶ 73 (pay equity analysis examined "whether associates with similar roles, experience, and performance earn equal pay for equal work" and determined that plaintiff had "a gap in pay for work equal to [her] peers"). *See also* ¶¶ 74, 76, 77 (further details of pay equity analysis). Plaintiff does not dispute that these allegations are the foundation of her wage claims. *See* Pl.'s Resp., ECF 34 at 8 ("Plaintiff's allegations that male counterparts were paid more for equal work are admissions from Defendants' own pay

10

equity analysis."). I agree with Zigler that these allegations raise a reasonable inference that she and similarly situated female home office FAs were paid lower wages for the work they performed in that position than men who performed similar work.

That said, Zigler's allegations based on the pay equity report do not support her wage claims insofar as they challenge the wages she earned as a Team Leader—a position to which she was "promoted" in January of 2021. Zigler insists that her wage claims "relate to the entirety of her time as a Home Office employee," Pl.'s Opp., ECF 34 at 9, and she alleges that "[t]here are no distinctions between the job responsibilities of FAs working in any Edward Jones 'home office' locations." Am. Compl. at ¶¶ 112, 155. But her allegations make clear that her "Team Leader" role was a supervisory position for which she was required to undergo "weeks of training" on "new topics her new department covered," and which entitled her to a pay raise. *See* Am. Compl. at ¶¶ 52, 54, 64, 66. The pay equity analysis—which allegedly captured "a snapshot in time...at the end of the 2020 calendar year," *id*. at ¶ 74—did not consider whether Zigler earned less as a Team Leader (a role she began in 2021) than male Team Leaders. Zigler also alleges that she was required to work longer hours than her peers and to perform additional tasks not required of others due to the nature of the team she was assigned. But nothing in these allegations suggests that she earned less as a Team Leader than any male Team Leader

11

who performed similar work. For these reasons, I conclude that the Amended Complaint fails to state a claim that defendant violated the EPA and IEPA based on the wages it paid her in her role as a Team Leader.

Turning to plaintiff's Title VII claim, defendant argues that various dimensions of this claim must be dismissed as non-exhausted or untimely then goes on to attack the sufficiency of Zigler's allegations. Defendant's first argument is that Zigler's class claims exceed the scope of her administrative charge. For a federal claim to fall within the scope of an administrative charge, "the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 990 (N.D. Ill. 2010) (original emphasis, citations omitted). "This standard is a liberal one in order to effectuate the remedial purposes of Title VII[.]" *Id*.

Here, the allegations of discrimination that Zigler raises in the Amended Complaint generally echo those she raised in her administrative charge. It is true, as defendant observes, that in the charge, Zigler complained about discrimination on behalf of herself and similarly situated "female FAs," while her complaint asserts claims on behalf of (presumably broader) classes of "female 'home office' associates." But this strikes me as an issue concerning the scope of the proposed class that can be addressed at the class certification stage rather than a ground for

dismissal. *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 990 (N.D. Ill. 2010), on which defendant relies, does not compel a contrary conclusion. Indeed, the liberal pleading standard the *Metz* court acknowledged "is satisfied if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). That is the case here.

Defendant next argues that Zigler failed to exhaust—and later argues that she fails to state—a disparate impact claim under Title VII because neither her administrative charge nor her Amended Complaint identifies any facially neutral policy that allegedly affected her disproportionately because of her sex. Defendant's arguments in this connection—both procedural and substantive—have merit. A disparate impact claim "must identify a specific employment practice, allege its causation of the disparate impact, and give Defendants fair notice of the claim." *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 902 (N.D. Ill. 2011). Zigler does not identify a "specific employment practice" but instead asserts broadly that defendant applied its "compensation program" in a manner that "disadvantages female home office employees." Resp., ECF 34 at 20. That is insufficient.

13

Zigler cites *Bland v. Edward D. Jones & Co., L.P.*, No. 18-CV-03673, 2020 WL 7027595 (N.D. Ill. Nov. 30, 2020), to argue that her generic allegations about defendant's "compensation program" are adequate to state a viable disparate impact claim. But unlike Zigler, the *Bland* plaintiffs grounded their claims in several specific policies, "such as assignment of territories and offices, selection to the Legacy and Goodknight programs, and distribution of client accounts," which they claimed disproportionately disadvantaged Black FAs. *Id.*, 2020 WL 7027595, at *15. Although plaintiff mentions these practices in her allegations about her experience as a "field FA," she expressly limits her claims to the discrimination she allegedly experienced as a home office FA. Indeed, the gravamen of Zigler's discrimination claim is that defendant: paid her less than male home office FAs because of her sex; failed to give her work commensurate with her position because of her pregnancy; and gave her an exceptionally difficult team to lead when she returned from parental leave, forcing her to work harder than other Team Leaders and making it impossible for her to satisfy her performance metrics. All of that amounts to a disparate treatment claim.

Zigler's disparate treatment claim survives defendant's motion. I have considered the battery of procedural and substantive arguments defendant raises—that Zigler lacks standing because she does not claim to have been injured by all of the practices she

14

complains about; that some of the conduct Zigler alleges falls outside of the limitations period; that claims resting on "generically stated employment conditions" are not exhausted; that Zigler "does not explain what facts lead her to conclude Edward Jones discriminated against her"; and that she does not sufficiently allege a pattern or practice of discrimination—and I conclude that none warrants extended discussion. The standing argument borders on the frivolous. The limitations argument states an affirmative defense that is not generally appropriate for resolution on the pleadings, and that even if meritorious would not compel outright dismissal of Zigler's claim. The exhaustion argument is meritless because the complaint's allegations concerning such issues as training, sales support, business opportunities, and the like mirror allegations Zigler raised in the administrative charge. And the challenges to the substance of Zigler's pleading simply ignores the text of the Amended Complaint. A disparate treatment claim requires only that a plaintiff "advance plausible allegations that she experienced discrimination because of her protected characteristics." *Kaminski v. Elite Staffing*, Inc., 23 F.4th 774, 776 (7th Cir. 2022). Zigler's allegations amply satisfy this standard. As for her claim of a "pattern or practice" of discrimination, Zigler's assertion that up to two percent of defendant's associates were paid inequitably based on a protected

15

characteristic plausibly suggests something more than an isolated experience.

The final section of defendant's motion argues that Zigler's claims under the IEPA and the IHRA should be dismissed for the same reasons that warrant dismissal of her federal claims. Indeed, Zigler's IEPA and IHRA claims are subject to the same analyses as their federal analogues and should be resolved in a similar manner.

For the foregoing reasons, defendant's motion to dismiss is granted to the extent it targets: 1) Zigler's EPA and IEPA claims arising out of the wages she earned as a Team Leader; and 2) Zigler's Title VII and IHRA claims based on a disparate impact theory of liability. The motion is otherwise denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: June 9, 2023